UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-81474-CIV-RYSKAMP/VITUNAC

Board of Trustees of Delray Beach Police
and Firefighters' Retirement System,

    Plaintiff,

vs.

Citigroup Global Markets, Inc.,

    Defendant.

_____/

## ORDER DENYING MOTION TO COMPEL ARBITRATION AND DENYING MOTION FOR HEARING

THIS CAUSE comes before the Court pursuant to Defendant Citigroup Global Markets, Inc., f/k/a Salomon Smith Barney, Inc.'s ("Smith Barney") Motion to Compel Arbitration and to Stay, filed December 11, 2008 **[DE 2]**. Plaintiff the Board of Trustees of the City of Delray Beach Police and Firefighters' Retirement System ("Board") responded on January 16, 2009 **[DE 12]**. Smith Barney replied on February 17, 2009 **[DE 20]**. The Board requested a hearing on this motion on March 19, 2009 **[DE 22]**. Pre-trial procedures in this matter have been stayed pending resolution of this motion, which is ripe for adjudication.

### I.    BACKGROUND

On or about November 12, 2008, the Board filed this action in the 15th Judicial Circuit of Florida in and for Palm Beach County. Smith Barney removed this action to this Court on December 10, 2008 pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and

because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  The Board is a citizen of the State of Florida, and Smith Barney is a New York corporation with its principal place of business in New York, New York.  The Complaint alleges damages in "an amount that [the Board] estimates to exceed $9,000,000."  (Complaint, ¶ 4.)  The Board separately alleges that it was "deprived of" more than $116,000 in connection with fixed income securities transactions and incurred damages of greater than $90,000 in connection with alleged "excess charges."  (Complaint, ¶ 25, 27.)

The Board administers and operates the City of Delray Beach Police and Firefighters Retirement System Pension Trust Fund ("Fund").  According to the Board, Smith Barney served as the Fund's pension consultant from 1995 until August 2006 and executed certain fixed income and equity securities transactions for the Fund.  The Board asserts that it entered into an agreement for pension consulting services with Smith Barney on October 1, 1995 and that it entered into a second agreement for pension consulting services with Smith Barney on December 20, 2002 ("Pension Consulting Agreements").  The Board maintains that the Pension Consulting Agreements created a fiduciary relationship between Smith Barney and the Board.  The Pension Consulting Agreements do not contain arbitration clauses.

On December 19, 2003 and October 10, 2004, the Chairman of the Board, William Adams ("Adams"), executed Smith Barney FMA Account Applications ("Account Applications") for the Fund's account numbers 762-05307 and 762-06203, respectively, which provide as follows:

> In consideration of Citigroup Global Markets, Inc. ("you")
> accepting an account for me/us, I/we ("I") acknowledge that I have

>read, understand and agree to the terms of the attached Client Agreement in sections 1 through 11.

Immediately above Adams's signature on page two of the Account Applications is an acknowledgment that provides as follows: "I acknowledge that I have received the Client Agreement which contains a pre-dispute arbitration clause on page 3, section 6." Section 6 of the accompanying Client Agreements provides, in pertinent part, as follows:

>I agree that all claims and controversies, whether such claims or controversies arose prior, on or subject to the date hereof, between me and SB and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in any such account or accounts; (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration, and only before, any self-regulatory organization or exchange of which SB is a member.

The Board has asserted claims against Smith Barney for breach of contract, breach of fiduciary duty, fraud and negligent misrepresentations. The Board claims that Smith Barney breached its fiduciary duty and obligations under the Pension Consulting Agreements by allegedly providing erroneous investment reports to the Board, misleading the Board regarding facts concerning the performance of the Fund's investment managers and portfolio, and engaging in undisclosed conflicts of interest in connection with fixed income and equity securities transactions effected for the Fund. Smith Barney moves to compel arbitration pursuant to the arbitration provision referenced in the Account Applications.

4

## II.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, a written agreement to arbitrate arising from a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a strong federal policy in favor of arbitration. See Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003). It "leaves no place for the exercise or discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration...." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241 (1985) (emphasis in original).

"[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983)). Despite the strong federal policy in favor of arbitration, "the FAA does not require parties to arbitrate when they have not agreed to do so." Volt Info. Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255 (1989).

## III.   DISCUSSION

**A.   Judicial Resolution Appropriate**

The Board argues, *inter alia*, that Adams lacked both actual and apparent authority to execute the Account Applications. These issues are suitable for judicial resolution as each attacks the arbitration agreement itself rather than the entirety of the Account Agreements. In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1806 (1967), the Supreme Court held that a federal court may adjudicate a claim of fraud in the

inducement of the arbitration clause itself, which goes to the "making" of an arbitration agreement under Section 4 of the FAA, but may not "consider claims of fraud in the inducement of the contract generally." Id. at 404, 87 S.Ct. at 1806. Buckeye v. Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 1209 (2006) held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." This rule applies to challenges that would render the contract void or voidable. Id. at 446-48, 126 S.Ct. at 1209-11. Nevertheless, challenges as to "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal and whether the signor lacked the mental capacity to assent" are to be judicially resolved. Id. at 444 n.1 (internal citations omitted).

**B.     Board Review Process**

The Board explains that it has a designated review process for both execution of and modification to the Pension Consulting Agreements. The Board adopted the Pension Consulting Agreements only after authorization by the full Board and after submission of same to outside counsel for approval. The December 20, 2000 Pension Consulting Agreement provides that "[a]ny changes to this Agreement requested either by the Consultant or the Board may only be effected if mutually agreed upon in writing by duly authorized representatives of the parties hereto. This Agreement shall not be modified or amended or any rights of a party to it waived except by such a writing." The Board also notes Florida statutes providing that decisions relating to pension trust funds for firefighters and police officers must come from majority votes of board members. See Fl. Stat. § 175.071(2)(providing that "[a]ny and all acts and decisions [of a board of trustees of a firefighter pension fund] shall be effectuated by vote of a majority of the members

of the board...."); Fl. Stat. § 185.06(2)("Any and all acts and decisions shall be effectuated by a vote of the majority of the members of the board [of trustees of a local police pension board]....").[1] Adams maintains that he would sign Smith Barney documents without approval of the Board or outside counsel if the documents were merely ministerial. If any of the documents Smith Barney gave Adams to sign were substantive rather than ministerial, Smith Barney would, according to Adams, notify Adams to that effect so that the Board and its counsel could be consulted.

C.     **Actual Authority**

Smith Barney maintains that Adams's authority to open Smith Barney accounts necessarily includes the authority to execute an arbitration agreement on behalf of the Board. Smith Barney has not cited, and the Court could not locate, a Florida case in which a member of the board of a police or firefighter pension trust fund was able to bind the Board via unilateral action. Absent any authority that would allow this Court to overlook application of the previously cited Florida statutes, the Court concludes that Adams lacked actual authority to execute the Account Agreements.

D.     **Apparent Authority**

An agent has apparent authority where there is a representation by the purported principal, reasonable reliance on that representation by a third party, and a change in position by the third party in reliance upon such representation. See Smith v. American Auto Ins. Co., 498 So.2d 448, 449 (Fla. 3d DCA 1986). The Board notes that representatives from Smith Barney

---

[1] The Board also cites to City of Delray Beach Code §§ 33.65-33.66. The Board does not quote any portion of this Code, nor does it point to any place in the record where excerpts of this Code are attached. Accordingly, the Court will not discuss this Code provision.

were present at Board meetings in 1995 and 2000 at which the terms of the pension consulting agreements were discussed and approved. Thus, Smith Barney knew that the full Board voted to approve the terms of the Pension Consulting Agreement executed in 1995. Smith Barney was also present at meetings at which the Board discussed the proposed new Pension Consulting Agreement, made decisions concerning substantive terms that were at issue, and approved a motion that provided for the contract to be negotiated subject to approval of outside counsel. The record does not demonstrate that the Board held Adams out as having authority to execute substantive modifications to the Pension Consulting Agreements. Given Smith Barney's presence at the previously mentioned Board meetings, Smith Barney knew that Adams could not sign the Account Agreements without approval of the Board and its counsel. Smith Barney lacked a reasonable basis to assume that Adams had authority to bind the Board to material modifications to the Pension Consulting Agreements.

Even if the Board held Adams out as having such authority, the Florida statutes regarding management of police and firefighter pension funds would prevail. The legislature is free to abrogate common law via statute. See Florida Hosp. Waterman, Inc. v. Buster, 984 So.2d 478, 503 n.13 (Fla. 2008)("[S]tatutes can abrogate common law."). The statutes indicate a legislative intent to ensure that decisions relating to firefighter and police officer pension trust funds come from majority votes of board members.

Whereas the Court finds that Adams was without either actual or apparent authority to execute the Account Agreements, the Court declines to enforce the arbitration clauses contained therein. The remaining arguments for and against enforcement of the arbitration clauses are moot.

## IV.  CONCLUSION

THE COURT, being fully advised and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that the Motion to Compel Arbitration and to Stay, filed December 11, 2008 **[DE 2]**, is DENIED.  The parties shall submit their scheduling materials within ten days of the date of this Order.  It is further

ORDERED AND ADJUDGED that the Board's Motion for Hearing, filed March 19, 2009 **[DE 22]**, is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 23rd day of June, 2009.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE